**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y
★ AUG 18 2010 ★
BROOKLYN OFFICE

**US · ORIGINAL** 

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------X

UNITED STATES OF AMERICA,

        Plaintiff,

   -against-

APPROXIMATELY $7,057.89 FORMERLY ON DEPOSIT AT WACHOVIA BANK ACCOUNT NUMBER 2000006197481 IN THE NAME OF PRODUCER ARTISTS MGMT.;

APPROXIMATELY $26,200.00 FORMERLY ON DEPOSIT AT JP MORGAN CHASE BANK ACCOUNT NUMBER 735956500 IN THE NAME OF JUAN TORO (THE RELENTLESS AGENCY);

APPROXIMATELY $1,048.00 FORMERLY ON DEPOSIT AT BANK OF AMERICA BANK ACCOUNT NUMBER 1596384968 IN THE NAME OF AEROLIGHT USA, INC., and

APPROXIMATELY $20,000 FORMERLY ON DEPOSIT AT BANK OF AMERICA BANK ACCOUNT NUMBER 3675084102 IN THE NAME OF J. V. CORPARTS, INC.

        Defendants.
---------------------------------X

**CV 10 - 3811**

VERIFIED COMPLAINT
<u>IN REM</u>

**IRIZARRY, J.**

Plaintiff, United States of America, by its attorney, Loretta E. Lynch, United States Attorney for the Eastern District of New York, Tanya Y. Hill, Assistant United States Attorney, of counsel, alleges upon information and belief as follows:

## PRELIMINARY STATEMENT

1. This is a civil action in rem to forfeit and condemn to the use of the United States the above-captioned defendant funds (the "Defendant Funds"), in accordance with: (a) 18 U.S.C. § 981(a)(1)(A), as property involved in money laundering transactions or attempted money laundering transactions, in violation of 18 U.S.C. § 1956, or any property traceable thereto; (b) 21 U.S.C. § 881(a)(6), as monies furnished or intended to be furnished in exchange for a controlled substance in violation of the Controlled Substances Act (the "CSA"), 21 U.S.C.§§ 841 et seq., and monies used or intended to be used to facilitate a violation of the CSA, and/or; (c) 31 U.S.C. § 5317, as monies involved in violations of, or attempts to violate, federal reporting requirements under 31 U.S.C. § 5324.

## JURISDICTION AND VENUE

2. This court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1345 and 1355.

3. Venue is proper pursuant to 28 U.S.C. §§ 1355 and 1395 in that some of the acts and omissions giving rise to the forfeiture occurred in the Eastern District of New York.

## THE DEFENDANTS IN REM

4. The Defendant Funds consist of approximately: (a) $7,057.89 seized from Wachovia Bank account number 2000006197481 held in the name of Producer Artists Mgmt. ("Wachovia 481"); (b) $26,200 seized from JP Morgan Chase account number 735956500 held in the name of Juan Toro (The Relentless Agency) ("Chase 500"); (c) $1,048 seized from Bank

2

of America account number 1596384968 held in the name of Aerolight USA, Inc. ("BOA 968"); and (d) $20,000 formerly on deposit at Bank of America account number 3675084102 in the name of J. V. Corparts, Inc. ("BOA 102"), totaling $54,305.89 (collectively the "Defendant Accounts").

## STATUTORY BACKGROUND

5. Pursuant to 18 U.S.C. § 981(a)(1)(A), any property, real or personal, which is involved in a transaction or attempted transaction in violation of federal money laundering laws, 18 U.S.C. §§ 1956 or 1957, and any property traceable thereto, is subject to forfeiture to the United States.

6. Pursuant to 21 U.S.C. § 881(a)(6), all moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance and all proceeds traceable to such an exchange and all moneys, negotiable instruments and securities used or intended to be used to facilitate any violation of Title 21 of the United States Code is subject to forfeiture to the United States.

7. Pursuant to 31 U.S.C. § 5317(c)(2), any property involved in a violation of 31 U.S.C. § 5324 (structuring), or any conspiracy to commit any such violation, and any property traceable to such violation or conspiracy is subject to forfeiture to the United States.

## MONEY LAUNDERING

8. Narcotics traffickers amass large cash proceeds from the sale of narcotics in the United States. The traffickers, or those associated with the traffickers, frequently attempt to give the impression of legitimacy to these profits; i.e., to "launder" them, by making the profits appear to have been generated by a legitimate source. The traffickers must also devise various methods to remit those narcotics proceeds to suppliers of narcotics located in Colombia and other South

American countries, which are known source locations of narcotics, without alerting governmental or law enforcement agencies in either country.

9. In order to accomplish this goal, narcotics traffickers frequently use domestic and foreign banks and/or financial institutions in order both to make their narcotics profits appear to be from legitimate sources and to move those profits through the financial system into the countries where narcotics are produced.

10. A popular method to launder narcotic proceeds is for narcotic traffickers, through a third party, to "sell" their narcotic proceeds in the United States for pesos in Colombia. This practice, commonly known as the Black Market Peso Exchange ("BMPE"), is centered around a BMPE broker who can bring the drug dollars and the legitimate pesos together.

11. In a common BMPE scheme, a BMPE broker will identify a South American businessperson, who imports goods from places such as the United States, China or Panama. The BMPE broker will offer the South American businessperson an opportunity to pay the debt owed to the exporter in the foreign country at a significant discount compared to the cost of making the payment through a South American bank. The South American business person who agrees to this scheme will then turn over the payment for the imported goods in the form of pesos to the BMPE broker who in turn will contact a Drug Trafficking Organization ("DTO"). When the BMPE broker contacts the DTO, the broker will offer the pesos in South America in exchange for the narcotics proceeds that are located in the United States.

12. The BMPE broker will then arrange to have the narcotics proceeds picked up by a member of the BMPE broker's organization. These money pick-ups will usually occur on a street corner or parking lot between two people who have never met before and will most likely never meet again. These pick-ups frequently involve several hundred thousands of dollars in

narcotics proceeds.

13. Following a money pick-up, the BMPE broker arranges to forward those funds to the exporter in the United States to pay the debt of the South American businessperson. This can be accomplished by remitting those funds directly to the exporter, either through money orders or by depositing the narcotics proceeds directly into an account held by the exporter.

## BANK SECRECY ACT

14. One of the first steps in laundering and/or transporting narcotics proceeds is to deposit the narcotics proceeds with a bank or financial institution. Once the narcotics proceeds are deposited into a financial institution, they are more easily laundered and transported.

15. The Currency and Foreign Transactions Reporting Act, 31 U.S.C. § 5313 et. seq., also known as the Bank Secrecy Act (the "BSA"), was designed to combat money laundering by imposing reporting requirements on virtually all transactions involving more than $10,000 in United States currency.

16. Specifically, under 31 U.S.C. § 5313(a) and its related regulations, when a domestic financial institution is involved in a transaction for the payment, receipt, or transfer of U.S. coins or currency ("cash") in an amount greater than $10,000, the institution shall file a Currency Transaction Report ("CTR") for each cash transaction, such as, by way of example, a deposit, withdrawal, exchange of currency or other payment or transfer by, through or to a financial institution. CTR's are filed with the Financial Crimes Enforcement Network ("FinCen") at the Detroit Data Center on forms that require, among other things, the identity of the individual who conducted the transaction and the individual or organization for whom the transaction was completed.

17. Many individuals involved in illegal activities, such as narcotics trafficking and

money laundering, are aware of the reporting requirements and take active steps to cause financial institutions to fail to file CTRs. These active steps are often referred to as "structuring." They involve making multiple cash deposits or withdrawals, in amounts less than $10,000, but which in the aggregate exceed $10,000, to multiple banks and/or branches of the same bank on the same day or consecutive days. Structuring is prohibited by 31 U.S.C. § 5324.

18. Often, structuring activity involving the BMPE can occur when multiple individuals deposit currency into the same bank account at the direction of a BMPE broker or other launderer of illicit funds. Sometimes these deposits can be made in different geographical locations, where the DTO is located, rather than transporting illicit dollars to one central location for deposit.

## FACTS

19. Starting in approximately November 2007, agents of The United States Department of Homeland Security, Immigration and Customs Enforcement ("ICE") have been conducting an investigation of an international money laundering organization that launders the proceeds from several Colombian DTOs. The investigation has revealed through the development of cooperating witnesses, confidential sources and other leads that the DTOs smuggle multi-kilogram quantities of heroin and cocaine into the United States and distribute the drugs within the New York area and elsewhere. The investigation has also revealed that the DTOs use a money-laundering organization coordinated by an individual located in Colombia ("Colombian coordinator"), who employed associates in New York, New Jersey, Massachusetts and Florida to collect the proceeds of narcotics trafficking activities and lauder the proceeds through the BMPE.

20. During the course of the investigation, ICE agents arrested a member of the

Colombian coordinator's money-laundering organization who admitted his/her involvement in the money-laundering conspiracy and agreed to cooperate with law enforcement ("CW1"). CW1 stated that he/she was involved in laundering narcotics proceeds on behalf of a Colombian drug organization since approximately January 2008. CW1 admitted that his/her role in the scheme was to retrieve amounts of United States currency from other co-conspirators, and then deposit the United States currency in various bank accounts. CW1 further admitted that he/she was aware the money he/she was depositing was from proceeds of some form of illegal activity and that he/she believed the source of the funds was narcotics trafficking.

21. According to CW1, CW1 received instructions for the money laundering activities from members of the organization in Colombia. CW1 specifically identified the Colombian coordinator as one of the individuals who provided such instructions. According to CW1, the Colombian coordinator and his drug trafficking associates in Colombia would provide phone numbers for individuals in the United States and instructed CW1 to contact these individuals and retrieve varying amounts of U.S. Currency. Once CW1 retrieved the currency, the Colombia coordinator would provide CW1 with bank account numbers via telephone or email. CW1 was further instructed to deposit the cash into those accounts in amounts less than $10,000 at a time to avoid currency reporting requirements, and to scan the bank deposit receipts and email them back to the Colombian coordinator after the deposits had been made.

22. CW1 admitted to making dozens of money pickups and deposits, ranging in amounts from $10,000 to upwards of $200,000 in United States currency. CW1 admitted that he/she deposited all of these funds into bank accounts provided by the Colombian coordinator and the Colombian drug traffickers. The accounts into which CW1 deposited money included the Defendant Accounts. Specifically, CW1 provided copies of bank deposits and email

correspondence for Wachovia 481, Chase 500, BOA 968 and BOA 102. These banks are all insured by the FDIC. Many of the deposits were made in bank branches located in Queens, New York. In total, the amount of deposits made by CW1 on behalf of the Colombian coordinator and his organization exceeded $1 million. The total deposits made into the Defendant Accounts totaled approximately $97,508, broken down as follows: $50,260 into Wachovia 481; $26,200 into Chase 500; $1,048 into BOA 968, and; $20,000 into BOA 102.

23. The information provided by CW1 was corroborated by independent evidence including, but not limited to: review of bank account records; consensually-recorded conversation between CW1 and his/her drug trafficking associates; analysis of email messages from his drug trafficking associates that were provided to ICE agents by CW1 and/or recovered pursuant to search warrants; physical surveillance of controlled money pickups conducted by CW1; and chemical analysis of the packaging materials used to transport U.S. currency to CW1 that revealed cocaine and/or heroin residue.

24. Based on, among other things, the above information, on March 4, 2010, United States Magistrate Judge Viktor Pohorelsky issued seizure warrants for the Defendant Accounts as well as a number of other accounts. In issuing the seizure warrants, the Court found that there was probable cause to believe that the Defendant Accounts, as well as all proceeds traceable thereto, were subject to seizure and forfeiture pursuant to: (a) 18 U.S.C. §§ 981(a)(1)(A) and 982(a)(1), as property involved in money laundering transactions or attempted money laundering transactions, in violation of 18 U.S.C. § 1956; (b) 21 U.S.C. §§ 881(a)(6) and 853, as monies furnished or intended to be furnished in exchange for a controlled substance in violation of the CSA; and/or (c) 31 U.S.C. § 5317, as monies involved in violations of, or attempts to violate, federal reporting requirements under 31 U.S.C. § 5324.

25. On March 4, 2010, the seizure warrants were served on Wachovia 481, Chase 500 and BOA 102, resulting in the following seizures: (a) $7,057.89 from Wachovia 481; (b) $26,200 from Chase 500; and (c) $20,000 from BOA 102. On March 11, 2010, the seizure warrant was served on BOA 968, resulting in the seizure of $1,048.

26. On April 12, 2010, the U.S. Customs and Border Protection's Fines, Penalties & Forfeiture ("FP&F") issued a notice of seizure to Producer Artists Management, located in Palm Beach, Florida, as the account holder of Wachovia 481. On April 20, 2010, Bruce Reinhart, on behalf of Ms. Pam Kennedy and Producer Artists Management, requested that the case be referred for the institution of judicial forfeiture proceedings.

27. On April 7, 2010, FP&F issued a notice of seizure to The Relentless Agency, located in the Bronx, New York, as the account holder of Chase 500. On April 28, 2010, George W. Galgano, Esq., on behalf of The Relentless Agency Corp., requested that the case be referred for the institution of judicial forfeiture proceedings.

28. On April 7, 2010, FP&F issued a notice of seizure to Aerolight, Inc. located in Miami, Florida, as the account holder of BOA 968. On April 28, 2010, Javier Casaudoumecq of Aerolight petitioned for the return of the $1,048. On May 7, 2010, FP&F denied the petition, and on May 18, 2010, Javier Casaudoumecq, on behalf of Aerolight USA, requested that the case be referred for the institution of judicial forfeiture proceedings. Wachovia 481, Chase 500 and BOA 968 all were included in a forfeiture allegation in the indictment styled United States v. Carlos Jaramillo, 10-CR-500 (KAM), filed in this Court on June 28, 2010, which charges that defendant with conspiring to commit money laundering in violation of 18 U.S.C. § 1956(h).

29. On April 1, 2010, FP&F issued a notice of seizure to J.V. Corparts, located in Doral, Florida, on behalf of BOA 102. On April 13, 2010, the BOA account holder petitioned for

relief. On April 26, 2010, FP&F denied the petition. On May 20, 2010, Janette Gonzalez, on behalf of J.V. Corparts, Inc., requested that the case be referred for the institution of judicial forfeiture proceedings.

30. Each of the Defendant Accounts departs from usual and customary business practices in receiving the cash deposits at issue in this complaint. Specifically, they allow customers to directly make cash deposits into business accounts, using several different branches, and frequently depositing rounded dollar amounts. In addition, the $20,000 deposited into BOA 102 was structured, made by four separate deposits totaling $20,000, all on the same day. Moreover three account holders are located in Florida, and the cash deposits at issue here were made into their accounts at New York bank branches.

### FIRST CLAIM FOR RELIEF
### (Property Involved in Money Laundering)

31. Plaintiff repeats the allegations of paragraphs 1 through 30 as if fully set forth herein.

32. The Defendant Funds constitute property involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1956.

33. As such, the Defendant Funds are subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

### SECOND CLAIM FOR RELIEF
### (Property Involved in Structuring)

34. Plaintiff repeats the allegations of paragraphs 1 through 30 as if fully set forth herein.

35. Wachovia 481, Chase 500 and BOA 102 constitute property involved in a violation of 31 U.S.C. § 5324.

36. As such, Wachovia 481, Chase 500 and BOA 102 are subject to forfeiture to the United States pursuant to 31 U.S.C. § 5317.

### THIRD CLAIM FOR RELIEF
### (Property Traceable to Sale of Controlled Substance)

37. Plaintiff repeats the allegations of paragraphs 1 through 30 as if fully set forth herein.

38. The Defendant Funds constitute moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance and all proceeds traceable to such an exchange or used or intended to be used to facilitate a violation of Title 21 of the United States Code.

39. As such, the Defendant Funds are subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(6).

WHEREFORE, Plaintiff requests that warrants of this Court be issued for the arrest of the Defendant Funds; that notice of these proceedings be given to all interested persons; that the Defendant Funds be forfeited and condemned to the use of the United States of America; that the Plaintiff be awarded its costs and disbursements in this action and for such other and further relief as this Court deems just and proper.

Dated: Brooklyn, New York
August 18, 2010

LORETTA E. LYNCH
UNITED STATES ATTORNEY
Attorney for Plaintiff
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

By: _____
Tanya Y. Hill
Assistant United States Attorney
(718) 254-6144

## VERIFICATION

1. I am a Special Agent with the United States Department of Homeland Security, Immigration and Customs Enforcement.

2. I have read the Verified Complaint in rem in this action.

3. The matters contained in the within Verified Complaint in rem are true and accurate to the best of my knowledge, information and belief.

4. The source of my information and the grounds for my belief are my personal knowledge, information provided by other law enforcement officers and the official files and records of the United States Department of Justice.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: Brooklyn, New York
       August 18, 2010

_/s/ Frank Almonte_
FRANK ALMONTE
Special Agent
Immigration and Customs Enforcement
Department of Homeland Security